## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | **No. 04-333-1** |
| STEVEN HIGHT | : | |

## MEMORANDUM

**Schiller, J.**                                                                                    **September 22, 2020**

Before the Court is the Defendant's pro se Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A). This matter compels the Court to consider whether a defendant can properly bring a motion for compassionate release before a district court if he has made a request to the warden for transfer to home confinement under the CARES Act, his request was denied, and 30 days have elapsed since he presented the request. After careful consideration, the Court finds that Defendant's motion is properly before it; however, the motion is denied.

## I.      BACKGROUND

### A.  Defendant's Crime

Steven Hight was convicted and sentenced in this Court on charges stemming from a 2003 armed robbery. On December 6, 2003, Hight entered the Caribbean Cuisine restaurant in Philadelphia, ordered something to eat, and then left. Roughly 30 minutes later, he returned to the restaurant demanding cash as he pointed a sawed-off, .22 caliber rifle at the employees. A struggle ensued between Hight and the restaurant employees, during which his rifle discharged several times without striking anyone. Defendant fled after being stabbed by one of the employees with a kitchen knife.  A jury convicted Defendant of Hobbs Act robbery,[1] use of a firearm during a crime

---

[1] 18 U.S.C. § 1951(a).

of violence,[2] and possession of a firearm by a convicted felon.[3] On May 23, 2005, this Court sentenced Hight to a 20-year term of imprisonment to be followed by five years of supervised release. Hight has served more than 16 years of that sentence and has an anticipated release date of May 4, 2021.

        *B.   The Pandemic and Defendant's Motion for Compassionate Release*

        The Court will not write at length about the havoc wreaked by COVID-19 in the United States. The virus, coupled with the abysmal response to it throughout much of this country, has led to the death of more than 200,000 people (and counting) in the United States. While the virus can be dangerous for anyone, people with certain underlying conditions and older adults are at increased risk of severe illness or death from COVID-19. *People Who Are At Increased Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 17, 2020). Prisons have been hit particularly hard by the pandemic, as they present numerous environmental factors favorable to the spread of the virus. See *United States v. Rodriguez*, Crim. A. No. 03-271, 2020 WL 1627331, at *1, 8-9 (E.D. Pa. Apr. 1, 2020) ("Prisons are tinderboxes for infectious disease.").

        In May of this year, following the onset of the COVID-19 pandemic, this Court received a *pro se* motion for compassionate release from Hight. The Court referred the motion to the Federal Defenders to determine if that office would file a counseled motion for compassionate release on Defendant's behalf. On June 23, 2020, the Federal Defenders notified the Court that it declined to file such a motion. On July 3, 2020, the Government filed a response in opposition to Defendant's motion, arguing that the motion should be immediately dismissed because it appeared Defendant failed to exhaust administrative remedies before filing the motion. (Gov't Resp. in Opp'n at 5,

---

[2] 18 U.S.C. § 924(c)(1).
[3] 18 U.S.C. § 922(g)(1).

ECF No. 109 ["Initial Gov't Resp."].) The Court ordered Defendant to supplement his motion with information regarding the exhaustion of administrative remedies. On July 13, 2020, Defendant filed another motion, to which he attached a letter from Warden Catricia L. Howard, dated May 19, 2020, which informed him that his request for transfer to home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was denied. The Court then ordered the Government to respond to the merits of Defendant's compassionate release request. The Government responded and the motion is now ripe for disposition.

## II.   DISCUSSION

Under 18 U.S.C. § 3582(C)(1)(A)(i), a judge may reduce an inmate's sentence if four conditions are met. First, the inmate must satisfy an administrative exhaustion requirement. Second, the Court must find that "extraordinary and compelling reasons warrant such a reduction." Third, any reduction granted by the Court must be "consistent with any applicable policy statements issued by the Sentencing Commission". Finally, the proposed reduction must be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a).

### A.  Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) provides that a court may reduce a defendant's term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could bring a motion for compassionate release on behalf of a defendant. Section 3582(c)(1)(A), as amended by the First Step Act, was intended to increase access to the remedy of compassionate release. With that goal

3

in mind, the Court rejects the Government's original argument that Hight did not exhaust his administrative remedies when he requested that the warden grant him a transfer to home confinement under the CARES Act and the request was denied.

On May 13, 2020, Defendant made a request to staff at FCI Allenwood "to be released to Home Confinement." On May 19, 2020, the Warden responded in writing to Defendant's request stating, "[a] comprehensive review of your circumstances revealed you have a current conviction for a crime of violence, you are classified as a medium security inmate with a high risk of recidivism, and you have not maintained clear conduct for the past 12 months. Therefore, you are not an appropriate candidate for home confinement placement." (Def.'s Mot. for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 111, ["Def.'s Mot. for Compassionate Release"] at 8.) For the following reasons, the Court finds that Hight exhausted his administrative remedies and will therefore reach the merits of his request.

Preliminarily, this interpretation is consistent with current Third Circuit authority, given that exhaustion is mandatory, but has not been held to be jurisdictional in nature. See *United States v. Davidson*, Crim. A. No.16-138, 2020 WL 4877255, at *5 n.4 (W.D. Pa. Aug. 20, 2020) (citing cases). In *United States v. Raia*, the Third Circuit stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP 'prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic,' we anticipate that the statutory requirement will be speedily dispatched in cases like this one." 954 F.3d 594, 597 (3d Cir. 2020). Clearly, the Third Circuit has already acknowledged the interconnectedness of requests for transfer to home confinement following the CARES Act and

requests for compassionate release. Further, in *United States v. Harris*, where the government concluded error in arguing that a prisoner must exhaust all administrative appeals when the warden denies his compassionate release request within 30 days, the Third Circuit, *per curiam*, wrote to confirm that a defendant may bring a motion for compassionate release before the court either after exhausting all administrative appeals or after 30 days have elapsed since presenting the request, "**whichever is earlier**." 812 F. App'x 106, 107 (3d Cir. 2020)(emphasis original). It further "urge[d] the Government to do what it can to expedite resolution of the matter without further delay." *Id*. at n.1. In the midst of a global pandemic, needless delays in evaluating compassionate release motions simply will not do.[4]

Next, as stated previously, the purpose of amending the compassionate release statute via the First Step Act was to increase the availability of compassionate release and to ensure prompt judicial review of such requests. (*See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582) (section entitled "Increasing the Use and Transparency of Compassionate Release"). To implement the First Step Act's expansion of compassionate release, the Bureau of Prisons issued a Program Statement listing the particular factors the BOP should consider to assess whether a request for reduction in sentence presents extraordinary and compelling circumstances. Fed. Bur. of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C.

---

[4] "The Bureau of prisons said 25 people have died in its custody this year while their requests for sentence reduction were under consideration, including 18 since March 1, around the time the coronavirus began spreading in U.S. communities." Justin Moyer and Neena Satija, *Frail inmates could be sent home to prevent the spread of covid-19. Instead, some are dying in federal prisons.* The Washington Post, Aug. 3, 2020, *available at* https://www.washingtonpost.com/local/public-safety/frail-inmates-could-be-sent-home-to-prevent-the-spread-of-covid-19-instead-some-are-dying-in-federal-prisons/2020/08/02/992fd484-b636-11ea-9b0f-c797548c1154_story.html

§§ 3582 and 4205(g), at 12 (Jan. 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

In light of the COVID-19 pandemic, Congress expanded the amount of time a prisoner may spend on home confinement "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP.]" CARES Act, Pub. L. 116-136, § 12003(b), 134 Stat. 281, 516 (2020). On March 26, 2020, the Attorney General of the United States issued a memorandum directing the Bureau of Prisons (BOP) to prioritize transferring vulnerable inmates to home confinement, where appropriate, to decrease the risks to their health.[5] The memorandum provides a "non-exhaustive list of discretionary factors" to consider in assessing which inmates should be granted home confinement, which includes:

> [1.] The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention guidelines;
>
> [2.] The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;
>
> [3.] The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;
>
> [4.] The inmate's score under PATTERN,[6] with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

---

[5] Office of Att'y Gen. Memo. for Director of Bur. of Prisons, Prioritization of Home Confinement As Appropriate in Response to COIVD-19 Pandemic (Mar. 26, 2020), *available at* https://www.justice.gov/file/1262731/download. The Attorney General made a finding of emergency conditions under the CARES Act on April 3, 2020, thereby expanding the BOP's authority to grant home confinement to prisoners. Office of Att'y Gen. Memo. For Director of Bur. Of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download.

[6] "On July 19, 2019, the Department announced the initial release of a new Risk and Needs Assessment System called PATTERN (Prisoner Assessment Tool Targeting Estimated Risk and Needs) in accordance with the requirements of the First Step Act (FSA)." *FSA Update*, Federal

[5.] Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

[6.] The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

These considerations for release to home confinement are substantially similar to the factors the BOP considers for all compassionate release requests. *Compare* Fed. Bur. of Prisons Program Statement 5050.50, at 12 ("Nature and circumstances of the inmate's offense. Criminal History. Comments from victims. . . . Institutional adjustment. Disciplinary infractions. Length of sentence and amount of time served. . . . Inmate's release plans (employment, medical, financial). Whether release would minimize the severity of the offense.").

It is difficult for the Court to imagine a situation in which a warden would deny a request for transfer to home confinement based on the above considerations but then determine it is appropriate to bring a motion for compassionate release on that individual's behalf. And why would the law require two nearly identical denials of relief from the same individual before a court could review the request for compassionate release? Thus, the Court is satisfied that the BOP's interest in having the first opportunity to review a request for compassionate release is sufficiently safeguarded if it reviewed and denied the inmate's request for transfer to home confinement under the CARES Act. This Court will not impose two administrative exhaustion requirements on

---

Bureau of Prisons, https://www.bop.gov/resources/news/20200115_fsa_update.jsp (last visited Sept. 17, 2020).

defendants in a manner that needlessly forces a defendant into an additional, at-least-30-day waiting period, and seems antithetical to the purpose of the amended statute.

The Government cites to a case decided by the Honorable Wendy Beetlestone, in which she found that the defendant had failed to exhaust administrative remedies and denied his motion for compassionate release without prejudice. *United States v. Powell*, Crim. A. No. 15-496-4, 2020 WL 2848190 (E.D. Pa. June 2, 2020). In *Powell*, Judge Beetlestone found that the defendant had provided no evidence of exhaustion, and stated,

> [t]he record reflects that Powell requested home confinement from the prison and that this request was denied on April 24, 2020. Then, on April 25, 2020, Powell wrote a letter to this Court in which he likewise requested release to home confinement under the CARES Act. However, Powell's request did not mention the First Step Act, compassionate release, or a request for modification of his prison term. The Court therefore declines to construe Powell's request for home confinement—relief governed by a different statute—as a request for compassionate release.

*Id*. at n.5. That case is clearly distinguishable from the instant matter. First, it is unclear if Judge Beetlestone declined to construe the letter written to the court as a request for compassionate release or if she declined to construe the inmate's request to the prison as a request for compassionate release. The argument is addressed by a single footnote. However, it appears that, regardless, the defendant had not provided evidence that 30 days had passed since he presented a request of any kind to the warden. Thus, Judge Beetlestone's opinion does not weigh against the determination made by the Court herein.

Indeed, it is true that requests for transfer to home confinement are governed by a different statute than requests for compassionate release. However, under the CARES Act and existing guidance from the Attorney General and BOP, "Inmates do not need to apply to be considered for home confinement. Case management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. . . . While all inmates are being

reviewed for suitability, any inmate who believes that they are eligible may request to be referred

to Home Confinement[.]" *Correcting Myths and Misinformation About the BOP and COVID-19*,

BOP,            May            6,            2020,            *available            at*

https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf.

Thus, a specific request by an inmate for transfer to home confinement under the CARES Act is

an affirmative act taken by the inmate to initiate review of his status and COVID-19 risk factors

by the BOP. Further, the "Frequently Asked Questions" page of the BOP coronavirus website

includes the following question and answer.

> If an incarcerated individual does not qualify for Home Confinement under the
> CARES Act, is there any other means for them to obtain early release from an
> institution?
>
> All inmates are reviewed for placement in Residential Reentry Centers and Home
> Confinement near the end of their sentence in accordance with the Second Chance
> Act and First Step Act. Every effort is being made to review inmates with
> impending releases [*sic*] dates for placement in Residential Reentry Centers.

*Frequently Asked Questions regarding potential inmate home confinement in response to the*

*COVID-19 pandemic*. BOP, https://www.bop.gov/coronavirus/faq.jsp (last visited Sept. 22, 2020).

Not even the BOP believes that an inmate whose request for transfer to home confinement

is denied could then be granted compassionate release by the BOP. Therefore, if a defendant

requests that the warden grant him a transfer to home confinement under the CARES Act, the

warden denies the request, and thirty days have elapsed since presenting the request to the warden,

the Court finds that the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) is satisfied.

Moreover, the pro se compassionate release motion form made available to inmates by the

BOP, and which Hight used here, under "Exhaustion of Administrative Remedies", contains a

warning to inmates that says "[y]our motion **may** be denied if do not [*sic*] meet these criteria."

(Def.'s Mot. for Compassionate Release at 3) (emphasis added). It then asks, "Have you submitted

your request for a **sentence reduction** to the warden of the institution where you are incarcerated? If no, please explain why not". (*Id.*)(emphasis added). The Court is especially wary of imposing an overly-restrictive interpretation of the exhaustion requirement on defendants acting pro se, who might reasonably understand the term "sentence reduction" to include transfer to home confinement. Because the Court finds that Defendant sufficiently exhausted his administrative remedies, the Court will address whether Hight has presented extraordinary and compelling reasons justifying his immediate release.

### B. *Extraordinary and compelling reasons*

While Congress has not defined "extraordinary and compelling," the Sentencing Commission has issued a policy statement with helpful guidance.[7] Pursuant to that statement, extraordinary and compelling reasons for modification of sentence exist where, "[t]he defendant is suffering from a terminal illness . . . [or] suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" U.S.S.G. § 1B1.13 cmt n.1(A)(ii). "The government acknowledges that an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19" qualifies under note 1(A). (Gov't Resp. in Opp'n at 14, ECF No. 116 ["Gov't Resp. on the Merits"].) However, the Government argues, "Hight presents only anxiety and PTSD, which are not risk factors related to COVID-19 illness." (*Id.*)

---

[7]      This Court has repeatedly rejected the Government's argument that the policy statement is binding on the Court, and will continue to follow the conclusion reached by the majority of courts that have considered the issue. *See, e.g.*, *United States v. Rodriguez*, Crim. A. No. 03-271, -- F. Supp. 3d --, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020). The Court retains the discretion to independently assess whether a defendant has presented extraordinary and compelling reasons beyond those contained in an outdated policy statement.

While the Court ultimately agrees that Hight has not presented extraordinary and compelling reasons justifying his immediate release, it does not agree categorically with the Government's position that "mental health issues by themselves are not sufficient for compassionate release[.]" (*Id.*) Indeed, such a statement appears to be in conflict with the Sentencing Commission's current guidance. Note 1(A) explicitly includes defendants who are "suffering from a serious functional or cognitive impairment . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(A)(ii)(II). The definition of of "cognitive" is: "of, relating to, being, or involving conscious intellectual activity (such as thinking, reasoning, or remembering)." *Cognitive,* Merriam-Webster, https://www.merriam-webster.com/dictionary/cognitive (last visited Sept. 17, 2020). Thus, the Court will not categorically exclude mental health issues from  the list of extraordinary and compelling reasons to justify compassionate release. While it may be possible for an inmate to meet the "extraordinary and compelling" test by way of mental health problems, here, Hight has not.

Hight presents anxiety and PTSD as his "extraordinary and compelling" reasons for immediate release, however, his medical records show no indication of a PTSD diagnosis. Further, Hight's anxiety appears to be a relatively recent development and seemingly well-controlled by medication in the BOP. Hight's records list anxiety, depression, and substance abuse disorders as Hight's current "chronic care" needs. (Gov't Resp. on the Merits, Exhibit A, at 8.) A note from Hight's records on February 6, 2020, states, "Inmate reports having anxiety issues, and has no

history for this previously."[8] (*Id.* at 57.) Hight's records indicate that on May 13, 2020, he reported "having difficulty sleeping" and that he was anxious. (*Id.* at 10.) However, he was prescribed a new medication, and when Hight saw a chronic care provider five days later on May 18, 2020, the provider noted Hight, "[f]eels good, has no complaints. Reports compliance with meds . . . . feels safe in his environment." (*Id.* at 6.) Clearly, Hight's anxiety has not substantially diminished his ability to provide self-care in prison, even in light of the COVID-19 pandemic. Therefore, Hight has not presented extraordinary and compelling reasons justifying his immediate release, and the Court need not address various sentencing considerations.

## III.    CONCLUSION

For the foregoing reasons, Hight's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) is denied. An Order consistent with this Memorandum will be docketed separately.

---

[8] On September 3, 2019, records indicate Defendant reported normal "thought content", no history of mental health treatment, and no current mental health complaint. (*Id.* at 74.) Notably, sometime between November 1, 2019 and January 27, 2020, Defendant received an "Incident Report" for Use of Drugs/Alcohol (*Id.* at 133.) On January 27, 2020, Hight was expelled from the Residential Drug Abuse Program. (*Id*.)